In the Matter of Roy Brenner, Appellant, against John F. O'Connell et al., Individually and as Members of the State Liquor Authority, Respondents.

Argued March 7, 1955; decided June 9, 1955.

*Monroe I. Katcher, II,* for appellant. I. By moving for an order to dismiss the petition upon objections in law, respondents, for the purpose of their motion and this appeal, admit the truth of all of the facts alleged in the petition. (*Matter of Nistal* v. *Hausauer,* 308 N. Y. 146; *Matter of Schwab* v. *McElligott,* 282 N. Y. 182; *Matter of Felice* v. *Swezey,* 278 App. Div. 958.) II. The courts have the power and the duty to make certain that respondents have not acted in excess of the grant of authority given them by statute or in disregard of the criteria or standard prescribed by the Legislature; and where respondents have refused, without legal excuse, to perform a duty imposed by statute, the courts may issue an order in the nature of mandamus to compel the performance of the duty. (*Matter of Wilson* v. *Quinn,* 253 App. Div. 403, 277 N. Y. 720; *Matter of O'Connor Long Is. Properties Corp.* v. *Bruckman,* 262 App. Div. 1018, 288 N. Y. 23; *Matter of Blankfein* v. *Bruckman,* 273 N. Y. 588; *Matter of Gifts By Wife, Inc.,* v. *Bruckman,* 253 App. Div. 350, 278 N. Y. 499; *Fulton Restaurant* v. *Quinn,* 253 App. Div. 740; *Reckler* v. *Quinn,* 254 App. Div. 710; *Olmstead* v. *Westchester Co. Alcoholic Beverage Control Bd.,* 254 App. Div. 63; *Matter of Sesselberg* v. *Schoeneck,* 151 Misc. 267; *Matter of Ramey* v. *Bruckman,* 178 Misc. 659; *Matter of Colaci* v. *Bruckman,* 172 Misc. 383; *Matter of Barry* v. *O'Connell,* 303 N. Y. 46.) III. The performance of a statutory duty on the part of an administrative official will be compelled, where no legal excuse exists for the refusal to perform such duty. (*Matter of City of New York* v. *Schoeck,* 294 N. Y. 559; *Fulton Restaurant* v. *Quinn,* 253 App. Div. 740; *Matter of Wilson* v. *Quinn,* 253 App. Div. 403, 277 N. Y. 720; *People ex rel. Carlisle* v. *Board of Super-*

*visors,* 217 N. Y. 424; *People ex rel. O'Loughlin* v. *Prendergast,* 219 N. Y. 377; *People ex rel. Belden Club* v. *Hilliard,* 28 App. Div. 140; *People ex rel. United States Grand Lodge* v. *Payn,* 161 N. Y. 229; *Matter of Danaher* v. *Harris,* 236 App. Div. 481; *People ex rel. Sayville Steamboat Co.* v. *Kempner,* 49 App. Div. 121.) IV. The Special Term erred in ruling that the provisions of subdivision 2 of section 17 of the Alcoholic Beverage Control Law, in and of themselves and without a lawful, valid administrative rule by respondents, furnish a legal excuse for the failure of the Nassau County Alcoholic Beverage Control Board to receive petitioner's application and proceed thereon in accordance with the statute. (*Fulton Restaurant* v. *Quinn,* 253 App. Div. 740.) V. That portion of rule 17 upon which respondents acted in determining not to permit the Nassau County Alcoholic Beverage Control Board to accept applications for a retail liquor store license to replace the decrease in the number of stores in Nassau County, was invalid by reason of respondents' employment of " need " as the standard for the acceptance of applications by local boards, instead of employing to that end the statutory standard of " convenience and advantage ". (*Fulton Restaurant* v. *Quinn,* 253 App. Div. 740; *Leader-Observer, Inc.,* v. *State Alcoholic Beverage Control Bd.,* 148 Misc. 757, 241 App. Div. 637; *Matter of Sesselberg* v. *Schoeneck,* 151 Misc. 267; *Matter of Levine* v. *O'Connell,* 275 App. Div. 217, 300 N. Y. 658; *Matter of Barry* v. *O'Connell,* 303 N. Y. 46.) VI. The subsequent amendment of rule 17 by respondents cannot operate to defeat petitioner's application. (*Matter of Brenner* v. *O'Connell,* 282 App. Div. 742.) VII. The procedure, policy or rule adopted by respondents of allowing removals of existing package stores licenses to new locations within the same county instead of permitting the acceptance of applications for new licenses, as contemplated by statute and rule 17, is inconsistent with and out of harmony with the substantive and procedural provisions of the Alcoholic Beverage Control Law and is, therefore, legally invalid. (*People* v. *Woodruff,* 32 N. Y. 355; *Matter of Hering,* 196 N. Y. 218; *Moritz* v. *United Brethrens Church,* 269 N. Y. 125; *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634; *Matter of Russo* v. *Valentine,* 294 N. Y. 338.)

*Alvin McKinley Sylvester* and *Robert W. Corcoran* for respondents. I. The issues now presented for adjudication were completely settled in prior proceedings between the same par-

ties. There are existing orders of a court of competent jurisdiction which have, on two prior occasions, determined the same cause of action between the parties. Those orders were unanimously affirmed by the Appellate Division and no appeal was taken therefrom. (*Matter of New York State Labor Relations Bd.* v. *Holland Laundry,* 294 N. Y. 480; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304.) II. The order which petitioner sought below, being in the nature of mandamus, is not available to compel respondents to do an act which is not required by law. (*People ex rel. Jones* v. *Thompson,* 147 App. Div. 150; *Matter of Hines* v. *State Bd. of Parole,* 181 Misc. 274; *Matter of Stewart* v. *City Court of Binghamton,* 183 Misc. 155; *Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164; *Matter of Eiss* v. *Summers,* 205 App. Div. 691, 236 N. Y. 638; *Matter of Marburg* v. *Cole,* 286 N. Y. 202; *Matter of Pruzan* v. *Valentine,* 282 N. Y. 498.) III. The administrative determination of respondents, now challenged, does not fall within any of the categories of action enumerated in section 121 of the Alcoholic Beverage Control Law, and hence is not subject to judicial review. (*Matter of Millman* v. *O'Connell,* 300 N. Y. 539; *Matter of Roden* v. *Bruckman,* 258 App. Div. 1076; *Matter of Guardian Life Ins. Co.* v. *Bohlinger,* 308 N. Y. 174; *Reckler* v. *Quinn,* 255 App. Div. 873, 280 N. Y. 768; *Matter of Calvary Presbyt. Church* v. *State Liq. Auth.,* 249 App. Div. 288, 275 N. Y. 552; *Matter of Marks* v. *Bruckman,* 170 Misc. 709.) IV. Subdivision 2 of section 17 of the Alcoholic Beverage Control Law specifically empowers the Authority to limit in its discretion the number of licenses of each class to be issued within the State and, in connection therewith, to prohibit the acceptance of applications for such class or classes of licenses which have been so limited. The petition herein, stating as it does that respondents refused to permit the local board to accept his application, does not state a cause of action. (*Sherman Plastering Corp.* v. *R. & R. Co.,* 281 App. Div. 293; *Matter of Buck* v. *Hurd,* 281 App. Div. 115; *Matter of Wilson* v. *Quinn,* 253 App. Div. 403, 277 N. Y. 720; *Matter of Barry* v. *O'Connell,* 303 N. Y. 46.) V. The Authority's policy of permitting the removal of existing package liquor stores within the same county is proper and in keeping with the general spirit and intent of the Alcoholic Beverage Control Law.

CONWAY, Ch. J. On November 21, 1952, the appellant submitted a written request to the State Liquor Authority to accept

an application for a package liquor store license in the village of Massapequa Park in Nassau County. The basis for this request was the allegation that there had been a decrease of one retail liquor store license in the County of Nassau between 1948 and 1952. Shortly thereafter the Authority notified appellant that his request was being held in abeyance pending the completion of a survey of New York City, Nassau, Suffolk and Westchester Counties.

Before the completion of that survey the appellant commenced an article 78 proceeding on December 12, 1952, seeking an order directing the Authority to permit the local board in Nassau County to accept and consider appellant's application for a license. The Authority moved to dismiss the petition, and the motion was granted. The Appellate Division affirmed, pointing out that since the Authority had as then made no final determination on the application of November 21, 1952, the petition of December 12th was premature. (282 App. Div. 742–743.)

On July 20, 1953, after the Authority had completed its survey, it notified appellant that his request of November 21, 1952, was denied. Thereafter, on September 9, 1953, the Authority approved the removal of an existing licensee from Bayville to the section of Massapequa Park in which appellant had sought to open his store. On September 16, 1953, appellant commenced the present article 78 proceeding seeking an order directing the Authority to permit the local board in Nassau County to consider his application. That petition was dismissed by Special Term, and the Appellate Division has affirmed unanimously.

Subdivision 2 of section 17 of the Alcoholic Beverage Control Law gives the State Liquor Authority the power, jurisdiction and duty " To limit in its discretion the number of licenses of each class to be issued within the state *or any political subdivision* thereof, and in connection therewith to prohibit the acceptance of applications for such class or classes of licenses which have been so limited " (emphasis supplied).

Rule 17 of the Rules of the State Liquor Authority — promulgated pursuant to the authorization of subdivision 2 of section 17 (*supra*) — stated, in part, that: " in the judgment of the Authority and in the exercise of the discretion vested in it by law, it is determined that public convenience and advantage are now adequately served by the number of premises licensed " (subd. 1).

It was therefore determined by that rule (subd. 2), " that the number of licenses issued pursuant to section 63 and section 79 of said law [i.e., the Alcoholic Beverage Control Law] be limited to the number *in each political subdivision as set forth on the annexed schedule,* and that no application for a license under either of said sections be accepted by any local board while the aforesaid number of said licenses shall be in effect " (1 N. Y. Official Compilation of Codes, Rules & Regulations, p. 757; emphasis supplied).

The schedule of political subdivisions referred to in the last paragraph is a schedule of *counties.* It is clear, therefore, that the term " political subdivision " refers to a " county ", and not to a " village ", a " town," a " township " or other political subdivision. That this meaning of that term is the correct one to be applied here is further evidenced by the definition of the " local board " under the Alcoholic Beverage Control Law. Section 30 of that law provides for the establishment of an alcoholic beverage control board in every *county* of the State, and then provides that the boards so constituted " shall be referred to and designated as *local* alcoholic beverage control boards " (emphasis supplied).

The meaning of " political subdivision " is important, for if that subdivision were the town, the village or the township, then the transfer of the license from Bayville to Massapequa Park might well involve an *increase* in the number of licenses in that subdivision. If, on the other hand, the term " political subdivision " as it is used in the statute and in the rules herein means " county ", then there was *no* increase in the number of licenses in Nassau County when the retailer was permitted to move from Bayville to Massapequa Park. Not only is it clear from the statutory scheme of " local " *county* boards, and from the schedule of "political subdivisions " listed in rule 17, that that term applies to and is intended to mean " county ", but that meaning facilitates and is in complete harmony with the policy of the entire Alcoholic Beverage Control Law. That policy is " to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law " (Alcoholic Beverage Control Law, § 2).

To hold that, in a county such as Nassau, with its numerous, overlapping villages, towns and other communities, the term '' political subdivision '' meant other than '' county '' would not tend to aid in carrying out the statutory policy, but would result in innumerable administrative difficulties since the number of local boards would be, likewise, innumerable. It is far better to hold that the intended subdivision is the *county* — for then the local *county* board can attempt to formulate an over-all plan for the distribution of retail liquor stores which would be exceedingly difficult — if not impossible — to do were the local unit — for example — the village. The desired goal of limiting liquor consumption would likewise be vastly facilitated by considering the *county* as the '' political subdivision '' rather than some smaller unit. This is particularly true in our State where our network of roads permits persons to travel easily and quickly from town to town, from village to village, and thus makes the unit for effective administrative control of liquor consumption an area larger than the town or village. The Legislature has chosen to make that subdivision the *county* in setting up local boards, and there is no sound reason for now adopting some other interpretation.

For these reasons we are unable to agree that it was arbitrary and unreasonable for the Authority to have denied the appellant's request. The survey made by the Authority had only recently revealed that the number of premises licensed to sell liquor in Nassau County was sufficient for the public convenience and advantage in that county. By permitting the transfer of the business of an already-licensed retailer *within* that county, and by refusing to license *new* retailers, the number of retailers was kept constant. So far as the appellant is concerned it is immaterial why the retailer was permitted to move from Bayville in Nassau County to Massapequa Park in Nassau County, so long as in denying his application the Authority acted within its legal competency. In view of the meaning of the words '' political subdivision '', and because the action of the Authority — based upon a recently concluded survey of conditions in that county — does not in fact increase the number of retailers in Nassau County, the action taken by the Authority upon appellant's request cannot be said to have exceeded the limits of a reasonable exercise of the discretion vested in the Authority by the Alcoholic Beverage Control Law (§ 17, subd. 2), in refusing to increase the number of licensed retail liquor stores in

Nassau County by permitting the appellant to open another store in that county. Our decision in *Matter of Barry* v. *O'Connell* (303 N. Y. 46) in no way diminishes the accuracy of this conclusion, for the precise issue in that case was whether or not the grounds set forth in the notice of disapproval of the appellant's application there were legally sufficient to support the determination reached. We held that they were not.

The order should be affirmed, with costs.

FULD, J. (concurring). While I agree with the Chief Judge as far as he goes, I must add a further word. Section 121 of the Alcoholic Beverage Control Law lists the only " actions " of the State Liquor Authority which are subject to review by the courts. Quite obviously, the Authority's present determination — which, in effect, denies petitioner's application that the Authority modify its rule providing for a moratorium (Rules of State Liquor Authority, rule 17) and permit the local board to accept petitioner's application for a liquor store license — is not included within any of the categories of action enumerated in section 121 and, accordingly, is not subject to judicial review.

BURKE, J. (dissenting). This is the third of a series of proceedings brought for the purpose of securing an order directing the State Liquor Authority to permit the Nassau County Alcoholic Beverage Control Board to consider the appellant's application for a package liquor store license in the village of Massapequa Park. A motion to dismiss the petition, pursuant to section 1293 of the Civil Practice Act, made by the respondent on the petition and all the papers and orders filed and entered in the two prior proceedings, was granted on the ground that the action of the State Liquor Authority was not subject to review and that, if it was, subdivision 2 of section 17 of the Alcoholic Beverage Control Law vests in the Authority the power to prohibit the acceptance of applications. The Appellate Division unanimously affirmed.

A motion to dismiss a petition for legal objections is equivalent to a demurrer, hence all allegations are deemed to be admitted. Where the petition states any facts upon which the petitioner is entitled prima facie to relief, it may not be dismissed as being legally insufficient. We then have the question presented as to whether this petition states any facts upon which the petitioner is entitled prima facie to relief.

On March 1, 1952, the appellant by mail requested the respondent, the State Liquor Authority, to modify its rule 17, which provided for a moratorium on the acceptance of applications for package liquor store licenses. The requested modification, if granted, would have permitted the Nassau County Alcoholic Beverage Control Board to consider the appellant's application for a package liquor store license in the village of Massapequa Park. The appellant asserted that the increase in the population of Nassau County would justify such a modification. The respondent denied this request on the ground that the petition failed to set forth facts which would justify such a modification. The appellant was also advised that the existence of the moratorium did not preclude the Authority from permitting operators of liquor stores, already licensed in Nassau County, to move to communities such as Massapequa Park if public convenience and advantage would be served thereby.

Thereafter, appellant commenced the first of three article 78 proceedings challenging the Authority's refusal to modify the moratorium rule. On September 24, 1952, the respondents served their answer and incorporated therein a motion to dismiss the petition. The Special Term sustained the Authority's motion to dismiss the petition, without prejudice, however, to a renewed application to the respondents on the ground that there had been a decrease in the number of licenses within the county.

On November 21, 1952, the appellant, pursuant to a subdivision of rule 17 permitting the Authority to suspend the moratorium when there was a determination of " need ", requested the Authority to accept an application for a liquor license on the ground that there had been a decrease of one retail liquor store in Nassau County. Four days later, on Novemer 25, 1952, the Authority directed that a survey be made of the City of New York and of the Counties of Nassau, Suffolk and Westchester. On the same day, November 25, 1952, the Authority amended the afore-mentioned rule 17 by eliminating the word " need " and substituting therefor the words " public convenience and advantage " in the part of rule 17 permitting the Authority to suspend the moratorium. On December 8, 1952, the Authority advised the appellant that such a survey and study was being made and that the Authority was " holding your request in abeyance until the completion of the survey ".

Without waiting for the completion of this survey, the appellant on December 12, 1952, commenced a second proceeding for an order directing the Authority to permit the Nassau County board to accept petitioner's application for a license to sell liquor in Massapequa Park upon the ground that there had been a decrease of one liquor license in the County of Nassau. The respondents moved to dismiss the petition. The Special Term granted the respondents' motion to dismiss on the ground that the petition did not state a cause of action. Both of the foregoing decisions were unanimously affirmed on June 29, 1953, by the Appellate Division (282 App. Div. 742). The Appellate Division concluded that the second proceeding was dismissed because it was premature, and so affirmed. Therefore, the dismissal of the previous proceeding on the ground that it was premature does not constitute a bar to the present proceeding. (*Moloney* v. *Nelson,* 158 N. Y. 351; *Converse* v. *Sickles,* 146 N. Y. 200, 209; *Rose* v. *Hawley,* 141 N. Y. 366.)

On July 20, 1953, the Authority, having completed its survey, notified the petitioner that his application had been denied. On September 9, 1953, the Authority approved the removal of an existing license from Bayville, Nassau County, New York, to the block within which the petitioner sought a license and the Bayville licensee has been operating a package liquor store there since October 3, 1953. On September 16, 1953, the petitioner instituted this third proceeding for an order directing the Authority to permit the Nassau board to consider his application.

At the outset, we are confronted with respondents' contention that all the questions on this appeal were settled in prior proceedings between the same parties. We agree with the Special Term and Appellate Division that the questions presented on this appeal were not settled in the prior proceedings between the same parties.

The remaining issues on this appeal are (1) whether, pursuant to the moratorium resolution (rule 17) adopted by the Liquor Authority, the Liquor Authority lawfully could deny the petitioner's application for permission to file an application with the local board for a liquor license in Massapequa Park, (2) whether the Authority acted within its powers under the statute in transferring the existing license from Bayville to Massapequa Park and further (3) whether such action was arbitrary or capricious.

The appellant contends that the resolution is invalid. If the board acted upon an invalid resolution, this court can review the refusal to grant the application under section 121 of the Alcoholic Beverage Control Law. (*Matter of Wilson* v. *Quinn*, 253 App. Div. 403, affd. 277 N. Y. 720.) There is a clear right of judicial review of a determination of the Liquor Authority made pursuant to a resolution unauthorized by law.

The appellant charges that the Authority acted on a resolution employing a standard of " need " rather than a standard of " public convenience and advantage " and thus disregarded the standard fixed by the Legislature. (*Matter of Barry* v. *O'Connell*, 303 N. Y. 46.) Subdivision 2 of section 17 of the Alcoholic Beverage Control Law must be construed in the light of the language of section 2 of the Alcoholic Beverage Control Law. Here, the moratorium resolution's reference to section 2 of the Alcoholic Beverage Control Law recognizes the necessity for so doing. Section 2 of the Alcoholic Beverage Control Law establishes a standard of " public convenience and advantage ". An examination of the entire resolution, rule 17, discloses that the Authority expressly stated that it had determined that " public convenience and advantage " would be adequately served by the number of premises licensed pursuant to sections 63 and 79 of the Alcoholic Beverage Control Law. Reading the rule in its entirety convinces us that the Authority in its promulgation was governed by a consideration of the proper statutory standard. The order which established the moratorium was predicated upon the proper statutory standard. The word " need " did not appear in rule 17 in the portions establishing the moratorium but only in connection with a possible future lifting of the moratorium to the extent of replacing licenses no longer in existence.

In this case the Authority has by rule properly established a moratorium. The Authority, if it does determine to lift the moratorium, must act in accordance with the proper statutory standard. Therefore, the denial of the petitioner's application without any other intervening acts on the part of the Authority presents no grounds for reversal.

The Authority, however, went beyond the mere denial of the petitioner's application. The appellant claims that the procedure, policy or rule, adopted by the Authority, of approving removal of existing licenses instead of permitting new licenses as contemplated by the statute and rule 17 is unlawful and

inconsistent with the substance and procedural provisions of the Alcoholic Beverage Control Law. The Authority in the first proceeding stated in an affidavit: "Under the Rules of the Authority, procedure is set up to allow package liquor stores in one community to apply for removal to another community, upon a showing that the public convenience and advantage will be served". In this case the Authority has found that public convenience and advantage would be served by a licensed store in the area and community, selected by the petitioner, by approving on September 9, 1953, an application for the removal of an existing license from Bayville, New York, to the block in Massapequa Park within which the petitioner seeks a license. It is important to note that the Bayville licensee's previous application to move to Massapequa Park was denied on January 29, 1953, five months prior to the completion of the survey. Presumably, the application was denied then because public convenience and advantage would not be served by such a transfer.

The Authority, by letter dated July 20, 1953, had advised the petitioner that the survey and study had been completed and that, based upon the results of the study, the application for permission for the Nassau County board to accept the application for a license in Massapequa Park was denied as public convenience and advantage will be adequately served by the number of premises now licensed to sell liquor for off premises consumption in Nassau County. If public convenience and advantage would require the approval of a license in Massapequa Park on September 9, 1953, certainly the study which had been completed should have indicated that public convenience and advantage would have required it on July 20, 1953, the date of the letter denying the petitioner's request that the Nassau County board be permitted to accept his application. It would seem to us that once the study and survey demonstrated to the Authority that public convenience and advantage required a license in Massapequa Park, a determination had to be made as to whether public convenience and advantage would be better served by the issuance of a new license or the transfer of ownership of an existing license. Evidence as to convenience and advantage was available to the Authority before June 10, 1953, when rule 17 was amended as a result of the study. (See Rule 17, N. Y. Official Compilation of Codes, Rules & Regulations [9th Off. Supp., 1954], pp. 227–228.)

The Authority claims to have used the statutory standard. But they used it in an unusual manner. The petitioner first applied for permission to file an application in 1952. We must assume that the Authority then could not determine that public convenience and advantage required a license in that location. However, when they did determine that public convenience and advantage required a license in Massapequa Park, the Authority had to exercise its discretion and judgment as to whether to issue a new license or approve the transfer of a license. Rule 17 clearly authorized the Authority to suspend the provisions of the moratorium when such a determination has been made. It is settled law that the exercise of discretion or judgment must not rest on an arbitrary or capricious base or be governed by prejudice. Here, the Authority, having made a determination as to public convenience and advantage in respect to the Massapequa Park location, was empowered to lift the moratorium, but it refused to do so, preferring to transfer an existing license.

This was tantamount to a refusal by the Authority to issue a license or permit, although the conditions permitting the issuance were present (rule 17). Such an act on the part of the Authority is reviewable by the courts (Alcoholic Beverage Control Law, § 121, subd. 1). The denial by the Authority of permission to pass upon an application is equivalent to a refusal to issue a license or permit.

The ostensible ground for denying the petitioner's long-pending application was that it would not serve the public convenience and advantage of the residents of Massapequa Park, yet under the statute and the rule the Authority had to determine that it would serve public convenience and advantage of the residents of Massapequa Park in order to transfer the license from Bayville to Massapequa Park. The grounds of the rejection of the petitioner's application appear to us to be on the face of this record inadequate. The Authority had a choice between the granting of a new license and the transfer of the existing license. There are no reasons advanced for selecting the second method of satisfying the standard of public convenience and advantage.

The Authority cannot rely on the defense that it has the power to limit the number of licenses of each class, for it also has the power under rule 17 to issue new licenses, where a determination of public convenience and advantage has been made. Such a

determination was made. It may argue that the people of Nassau County benefited by the change of the license from Bayville, New York, to Massapequa Park, but the term "public convenience and advantage" connotes in our opinion convenience and advantage to the people in the particular area. We are not in a position to judge the propriety of the action of the Authority. The record does not enable us to decide that the decision of the Authority must be sustained as a matter of law. We cannot assume that the discretion and judgment of the Authority was exercised free from prejudice, when the Authority approved the transfer of an existing license into the same block in Massapequa Park in which the petitioner was applying for a license within less than sixty days after it denied the petitioner's application. At the time the first proceeding was commenced, March 1, 1952, the practice of allowing the transfer or removal of an existing license was a so-called policy not made the subject of any public pronouncement. On November 25, 1952, the Authority adopted rule 37 which converted the so-called policy into a rule. However, rule 37 now in effect and the policy previously followed cannot be said to render inoperative the parts of rule 17, permitting the lifting of the moratorium, when a determination of public convenience and advantage has been made. In this case we have competing applications for the same location. The Authority obviously amended rule 17 and enacted rule 37 as a result of this litigation in order to carry out a predetermined policy. A dilemma, nevertheless, still confronted the Authority. It cannot argue that it can transfer an existing license to a new location without making a determination that public convenience and advantage would be served at that location and, if it concedes that it made a determination that public convenience and advantage would be served, it then had the power under rule 17 to agree to the acceptance of the application for a new license.

It is contended that subdivision 2 of section 17 of the Alcoholic Beverage Control Law, which gives the Authority power "To limit in its discretion the number of licenses of each class to be issued within the state or any political subdivision thereof", prohibits judicial review of the Authority's determination that the number of licenses in existence at the time the moratorium was promulgated are adequate for the *county*, as a whole; that is, the moratorium permits the Authority to transfer licenses within a county, so long as the public con-

venience and advantage of Nassau County, considered as a whole, is served and it is not compelled to concern itself with the public convenience and advantage of a particular town or village. This interpretation necessarily means construing the words, "political subdivision thereof" to mean "county" and county alone. Such an interpretation, it seems to us, is strained and not in accord with either the majority or the dissenting opinions in *Matter of Barry* v. *O'Connell* (303 N. Y. 46 [1951], *supra*), where this court held it error to deny an application for a liquor license on the ground that there was no "need" for a liquor store in the hamlet of Verplanck. The tenor of the opinions in that case indicates that the Authority must concern itself with the public convenience and advantage of the neighborhood as well as the county as a whole. An interpretation that the words, "political subdivision thereof" refer also to towns and villages is supported by the text of subdivision 1 of section 101-c of the Alcoholic Beverage Control Law.

"It is the declared policy of the state that it is necessary to regulate and control the manufacture, sale and distribution within the state of liquor and wine for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate price wars which unduly stimulate the sale and consumption of liquor and wine, disrupt the orderly sale and distribution thereof, and tend to destroy the statutory plan for location of off premises liquor and wine stores in *neighborhood communities* which most effectively serves public convenience and advantage, it is hereby declared as the policy of the state that the sale of liquor and wine should be subjected to certain restrictions, prohibitions and regulations." (Emphasis supplied.)

Under these circumstances, the Authority is required to show that the denial of this application was not an abuse of discretion. To this extent the petition states facts upon which the petitioner is entitled prima facie to relief.

Accordingly, the order of the Appellate Division should be reversed, with costs, and an order should be entered denying respondents' motion to dismiss the petition.

Desmond and Dye, JJ., concur with Conway, Ch. J.; Fuld, J., concurs in a separate memorandum; Burke, J., dissents in an opinion in which Froessel and Van Voorhis, JJ., concur.

Order affirmed.