Dye, J.
(dissenting). The decisions about to be made in this case and in Matter of Swalbach v. State Liq. Auth. (7 N Y 2d 518), handed down herewith, strike at the very heart of the legislative policy declaring that the regulation and control of the traffic in alcoholic beverages ‘ ‘ will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages ” (Alcoholic Beverage Control Law, § 2).
From 1934 to date, this court has been careful not to substitute its judgment for that of the State Legislature and the Liquor Authority in the carrying out of that stated policy. A majority are now not only striking down a determination, made pursuant to a stated policy of the Authority, respecting the location of licensed premises, on the ground that it could not adopt a policy in that respect, but have gone one step further by declaring that rule 45, promulgated in 1956 (Alcoholic Beverage Control Law, §§ 2, 17, subd. 2; § 111), is “ a gross administrative usurpation of legislative power not to be tolerated ”. They seek to justify this impeachment of a high level agency of our State Government by reading the rule not only as a calculated plan or scheme on the part of the Authority to evade its clear administrative responsibility respecting statutory procedures in the issuance of liquor licenses (§§ 54-55, 64), but also as a subtle device to deprive the applicant of his fundamental right of court review.
In essence, rule 45 limits liquor licenses for on-premises consumption “to the number in effect” on the stated date and those to be issued in accordance with the conditions there provided. Local boards may not accept for filing and processing any application for license (whether by way of assigned application or change in class) except that any person may be granted a waiver of the limitation, provided he establish, by proof satisfactory to the State Liquor Authority, compliance with certain enumerated conditions, in addition to which ‘ ‘ the applicant must make a prima facie showing that public convenience and advantage will be served and promoted after consideration of the neighborhood and the number and condition of hotels, restaurants and other eating places in the proposed area, whether licensed or not
*542 Rule 45 is substantially the same as rule 17. The latter rule was promulgated in 1952, pursuant to the same statute. It limited the number of licenses to those 11 in effect ’ ’ on the stated date, and forbade local boards to accept applications during a stated period, except under certain named circumstances. "When that rule was challenged, we upheld it (Matter of Brenner v. O’Connell, 308 N. Y. 636).
Rule 45 differs only as to the necessities of the subject matter dealt with. It relates to liquor licenses for “ on-premises ” consumption (§ 64), while rule 17 relates to liquor licenses for “ off-premises ” consumption (§§ 63, 79). In each instance the fundamental consideration is whether public convenience and advantage will be promoted. In either situation the Authority has the ultimate responsibility. A proper exercise of that broad discretion respecting licenses for “ on-premises ” consumption requires a large degree of flexibility, so that licenses may be issued whenever and wherever a bona fide eating place demonstrates to the Authority that such license or change in class will promote public convenience or advantage and will not add to the evils which the law is designed to prevent.
The court below has read the waiver requirement of rule 45 as an unwarranted restriction on the manner of issuance of licenses, and not contemplated by subdivision 2 of section 17, since the applications there mentioned are “in connection” with the limitation on the issuance of licenses. Such a reading flouts the long expressed policy of the State (§§ 2, 17, 111), and would be wholly inconsistent with our holding in regard to rule 17 (Matter of Brenner v. O’Connell, supra). Requiring a waiver during the proscribed period “in connection ’ ’ with license applications before a local board may receive and process them is not at aE unreasonable. It provides a procedure which in no way alters statutory standards for the control of the liquor traffic but, in fact, is an aid to expeditious and efficient administration, since it provides a prompt method of determining whether public convenience and advantage wiE be served before there has been a vast amount of time, money and paper work expended in connection with a hearing before the local board. The showing in each instance is materially different. We must bear in mind that ultimately it is the Authority which determines whether a license shaE issue or a change shaE be allowed. As has often *543 been said, there is no inherent right in a citizen to engage in the liquor traffic (Crowley v. Christensen, 137 U. S. 86; Matter of Wager v. State Liq. Auth., 4 N Y 2d 465).
Moreover, there is no merit to the contention that rule 45 is indefinite and uncertain in its application because it does not specify a numerical limitation on licenses, for the reason that the limitation mentioned refers to those in existence on a stated time and also those that may be issued in compliance with the conditions. The very nature of an eating place license necessitates the exercise of a broad unhampered discretion in order that public convenience and advantage will be promoted. Although we approved rule 17, which limited licenses “ to the number in effect” (Matter of Brenner v. O’Connell, supra), it does not follow that rule 45 must be stricken down because not so limited.
The challenge to rule 45, based on the alleged nonreviewability of a denial to issue a waiver, is wholly without substance. If, indeed, denial of a waiver is tantamount to a denial of a license, it follows as day follows night that the disappointed applicant can have a review in the manner provided by article 78 of the Civil Practice Act or “by any other appropriate remedy” (Alcoholic Beverage Control Law, §§ 2, 121, subd. 1). The failure of section 121 to specify the denial of a waiver is not evidence of nonreviewability. The confusion seems to arise out of an unwarranted attempt to apply the language of subdivision 2 of section 64 to the license of a bona fide restaurant. Section 55 prescribes the standard by which the bona fide restaurant should be judged. It was not intended to apply, nor does it apply, to a restaurant eligible for a liquor and wine license (Matter of Fernandez v. State Liq. Auth., 306 N. Y. 600, revg. 282 App. Div. 770). We have repeatedly declared that the intention of the Legislature in the enactment of a law should be ascertained from the cause or necessity which led to the enactment (People ex rel. Wood v. Lacombe, 99 N. Y. 43, 49), and that the “ end to be served, the mischief to be averted, supply the clews and the keys by which construction must be governed ’ ’ (Surace v. Danna, 248 N. Y. 18, 25; Caddy v. Interborough R. T. Co., 195 N. Y. 415).
It is significant that in the four years of its existence the rule has operated successfully and without challenge, that the vast number of persons subject to the regulatory jurisdiction of the *544 Authority do not oppose it, and that the Legislature, aware of its existence, has not seen fit to void it or in any other manner indicate its displeasure with the rule.
It is basic that “ State courts should uphold State regulation whenever possible ” (People v. Nebbia, 262 N. Y. 259, 271). On appeal to the Supreme Court of the United States, that court stated (sub nom. Nebbia v. New York, 291 U. S. 502, 537-538): ‘ ‘ Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of 1 egislative power.” The same comment applies with equal cogency to the problem now considered.
Matter of Kaplan v. Rohan (8 A D 2d 270), so strongly relied on by the majority in support of its decision, is distinguishable both on procedural and factual grounds. Nothing said in that opinion is binding on this court, nor does it necessarily point the way this court should follow. Moreover, it is the fact here that no waiver was requested and none has been denied.
I dissent and vote to reverse the order appealed from and to reinstate the order of Special Term, with costs. The first and third questions certified should be answered in the negative, and the second question certified should be answered in the affirmative.
Judges Froessel, Van Voorhis and Foster concur with Judge Fuld; Judge Dye dissents in an opinion in which Chief Judge Desmond and Judge Burke concur.
Order affirmed, etc.